**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------X

**SHAQUASIA HALL**,

Plaintiff,

-against-

**THE CITY OF NEW YORK, CAPT. PAUL LICHBRAUN, LT. ANTHONY RONDA, SGT. EMILE PROVENCHER (Shield 4239), DET. GLENDA WAJER (Shield 7574), and JOHN and JANE DOES 1-12**,

Defendants.

---------------------------------------------------------------------------X

**10 CV 8573**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff **SHAQUASIA HALL**, by her attorney, Joel Berger, Esq., for her complaint alleges, upon information and belief, as follows:

***NATURE OF THE ACTION***

1. This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution and laws of the United States and the State of New York, including false arrest and false imprisonment, by employees of the New York City Police Department (NYPD).

***JURISDICTION AND VENUE***

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b).

***PENDENT JURISDICTION***

5. This Court also has jurisdiction over plaintiff's state law claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6. On June 11, 2010, within ninety days after the claims alleged in this complaint arose, a

verified Notice of Claim was duly served upon the Comptroller of the City of New York pursuant to General Municipal Law § 50-e.

7. At least thirty days have elapsed since the service of the Notice of Claim, and adjustment or payment of the claims has been neglected or refused by defendant City of New York.

8. This action is being commenced within one year and ninety days after the happening of the events upon which the claims are based.

***JURY DEMAND***

9. Plaintiff demands a trial by jury in this action.

***PARTIES***

10. Plaintiff **SHAQUASIA HALL**, an African-American woman, is a citizen of the United States and a resident of New York State. She resides at 247 West 61st Street, # 5A, New York, NY 10023 (the Amsterdam Houses of the NYC Housing Authority (NYCHA)). She resides with her infant son, who was a month old at the time of the Incident alleged herein.

11. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

12. At all times relevant herein, defendants Captain Paul Lichtbraun, Lieutenant Anthony Ronda and Sergeant Emile Provencher (Shield 4239) were supervisory employees of the NYPD, and defendant Glenda Wajer (Shield 7574) was a Detective employed by the NYPD. At all times relevant herein, Lichtbraun, Ronda, Provencher and Wajer were all assigned to Narcotics Borough Manhattan North.

13. At all times relevant herein, defendants John and Jane Does 1-12 were police officers, detectives or supervisors employed by the NYPD. Plaintiff does not know the real names and shield numbers of defendants John and Jane Does 1-12.

14. At all times relevant herein, defendants Lichtbraun, Ronda, Provencher, Wajer and John and Jane Does 1-12 were acting as agents, servants and employees of defendant City of New York and the NYPD.

15. At all times relevant herein, all defendants were all acting under color of state law.

***FACTS***

16. In the early morning hours (approximately 5:30 A.M.) on Tuesday, March 16, 2010, numerous NYPD officers including defendants raided plaintiff Shaquasia Hall's dwelling. They banged on her the door and demanded entry.

17. Ms. Hall was asleep at the time and alone in the apartment with her one-month old baby boy. The banging awoke her, and she opened the door.

18. The officers entered, and promptly handcuffed Ms. Hall behind her back while they proceeded to search the entire apartment for approximately 2 hours.

19. The police even brought a dog into Ms. Hall's apartment, a drug-sniffing German Shepard controlled by a dog-handler from the NYPD K-9 Unit, to assist them in searching for drugs.

20. The sole target of the raid was Emir Williams, the father of plaintiff's baby boy. He was not in the apartment at the time.

21. The police had an arrest warrant for Williams, stating that he had been charged in an accusatory instrument with criminal sale of a controlled substance.

22. The police had had no information that Ms. Hall had engaged in any illegal conduct or

possessed any contraband.

23. The raid uncovered no drugs whatsoever. A subsequent report alleged that it had uncovered a ziplock bag with a "residue" of marijuana, but the "residue" was never tested.

24. The same police report claimed that the raid had uncovered "records," but the "records" were not defined and no one was charged with an offense for them.

25. The same police report claimed that the raid had uncovered "paraphernalia" in the form of "assorted ziplocks," but these were clean, ordinary plastic bags that can be used to hold buttons, pills, and other ordinary household items, and they were in a covered shoebox in a closet used solely by Emir Williams.

26. The police also found a clean, ordinary household food scale in the same covered shoebox in the closet used solely by Emir Williams.

27. The police also seized $400 in cash from a closet used exclusively by a cousin who stays with Ms. Hall. They also seized a digital camera belonging to Ms. Hall. As of this date neither the cash nor the camera has been returned.

28. The police then forced Ms. Hall to call Williams, and told him that she would be arrested for possession of "paraphernalia" -- the "assorted ziplocks" and the food scale -- unless he came to the apartment right away, in which case she would not be arrested.

28. When Williams did not appear at the apartment within approximately a half-hour after the telephone call, Ms. Hall was taken in handcuffs to the 20th police precinct.

29. It is believed that the arresting officer was defendant Detective Glenda Wajer, a female detective listed in police records as "officer executing warrant" and "Hall Sec/Recorder" of the raid. If it was not Det. Wajer, it was one of the John or Jane Doe defendants herein.

30. When Ms. Hall arrived at the 20th Precinct Williams was already there, having surrendered at the precinct even before she arrived.

31. Despite Williams's surrender, the police held Ms. Hall in custody at the precinct for approximately 5 hours.

32. During the 5 hours that plaintiff was held at the precinct she was processed as an arrestee, fingerprinted and photographed.

33. After approximately 5 hours in custody Ms. Hall was released, but she was told that a Desk Appearance Ticket (DAT) had been issued requiring her to appear in Manhattan Criminal Court on April 13, 2010, on a charge of criminally using drug paraphernalia in the second degree (Penal Law § 220.50 (3)), a Class A misdemeanor.

34. Ms. Hall was not handed a copy of any DAT.

35. When plaintiff appeared at the 100 Centre Street courthouse on April 13, 2010, the Clerk's Office advised her that the case was not ready and to inquire again after 90 days.

36. Having waited considerably more than 90 days and having received no communication from the Court in the mail, plaintiff eventually called the Court.

37. In response to her call, the Clerk's Office advised Ms. Hall that the Court had never received any record of any charge against her, and therefore there was no case against her at all.

38. The police arrested Ms. Hall and took her to the precinct on spurious charges, merely to obtain leverage over Williams. Even after Williams had surrendered at the precinct they incarcerated her for 5 hours. Realizing that the arrest was illegal, they then released her and didn't even bother to follow through by sending paperwork to the Court to have her charged.

39. Plaintiff narrowly avoided having her baby taken by the New York City

Administration for Children's Services (ACS). Plaintiff's mother, who lives outside the City, happened to be on her way to work in the City and was able to pick up the baby. But for this happenstance, the police conduct at issue here would have separated an infant from his mother.

40. The police knew perfectly well that there could be no colorable claim of constructive possession of the "drug paraphernalia," assuming *arguendo* that clean household plastic bags or a clean household food scale could ever be deemed "drug paraphernalia." New York law is clear that even with respect to narcotic drugs, constructive possession requires that the drugs be in "open view" and that the arrested person be "in close proximity" to them. Penal Law § 220.25 (2). Neither the plastic bags nor the scale were in open view or in close proximity to plaintiff. And the constructive possession statute applies only to drugs -- not to "paraphernalia."

41. Ms. Hall was arrested and jailed merely as a ruse to force Williams to surrender.

42. The NYPD has a uniform policy and practice of harassing all tenants of a raided NYCHA apartment even if the tenant has been cleared of any wrongdoing. This uniform policy and practice includes bringing about the issuance of eviction notices and hearings against NYCHA leaseholders. The NYPD actively participates in such NYCHA proceedings. Such a proceeding is presently pending against Ms. Hall.

***FIRST CLAIM FOR RELIEF***

43. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-42.

44. Defendants, by their conduct toward plaintiff alleged herein, violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

***SECOND CLAIM FOR RELIEF***

45. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-42 and 44.

46. The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police officers, detectives and supervisory officers.

47. The failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police officers, detectives and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

48. The official policies, practices and customs of the City of New York and the NYPD, alleged in ¶¶ 1-30, 32 and 33-34 violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

***THIRD CLAIM FOR RELIEF***

49. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-42, 44, and 46-48.

50. The conduct toward plaintiff alleged herein constituted false arrest, false imprisonment, the intentional, willful and malicious infliction of severe physical, mental and emotional distress, and employee negligence.

51. The conduct toward plaintiff alleged herein subjected her to trauma, shock, debasement, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, and suffering, and loss of earnings.

***FOURTH CLAIM FOR RELIEF***

52. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-42, 44, 46-48, and 50-51.

52. At all times relevant herein, the individual defendants were on duty and were acting within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

***PRAYER FOR RELIEF***

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against all individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
November 12, 2010

/s/ Joel Berger
**JOEL BERGER**
360 Lexington Avenue, 16th Fl.
New York, New York 10017
(212) 687-4911

**ATTORNEY FOR PLAINTIFF**